UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRENDA JOE YOUNG, | CASE NO. 1:16CV1919 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| NANCY BERRYHILL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Brenda Joe Young ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on November 7, 2016, Plaintiff asserts that the administrative law judge ("ALJ") failed to properly evaluate the opinion of her treating rheumatologist, Dr. Hassan. ECF Dkt. #16. On January 6, 2017, Defendant filed a brief on the merits. ECF Dkt. #18. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

## I.     FACTUAL AND PROCEDURAL HISTORY

On March 9, 2013, Plaintiff filed applications for DIB and SSI alleging disability beginning February 1, 2009 due to arthritis, high blood pressure, breathing difficulties, bronchitis, vaginal pain and swelling. ECF Dkt. #13 at 227-235, 248.[2] Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 158-187. Following the denial of her applications, Plaintiff requested an administrative hearing, and on April 27, 2015, an ALJ conducted an administrative hearing and

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 31. On May 12, 2015, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. *Id*. at 11-24. Plaintiff requested a review of the hearing decision, and on June 15, 2016, the Appeals Council denied review. *Id.* at 1-7.

On August 1, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties consented to the jurisdiction of the undersigned on October 17, 2016. ECF Dkt. #15. Plaintiff filed a brief on the merits on November 7, 2016. ECF Dkt. #16. On January 6, 2017, Defendant filed a merits brief. ECK Dkt. #18. Plaintiff did not file a reply brief.

## **II**.   **ALJ'S DECISION**

In her decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. ECF Dkt. #13 at 13. She further found that Plaintiff had not engaged in substantial gainful activity since February 1, 2009, her alleged onset date. *Id*.

The ALJ found that Plaintiff had the severe impairments of a history of knee and wrist pain, complex regional pain syndrome, obesity, anxiety disorder, and depressive disorder. ECF Dkt. #13 at 13. She further found that these impairments, individually or in combination, did not meet or equal any of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 14-16. The ALJ thereafter determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the abilities to: frequently sit, stand and walk; frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; frequently kneel, crouch, and crawl; perform simple, routine tasks with no production rate pace; and adjust to occasional changes in the work setting. *Id*. at 16.

The ALJ addressed Plaintiff's physical impairments and mental impairments in her decision, including Plaintiff's knee pain, which she had sustained in a motor vehicle accident in October of 2012. ECF Dkt. #13 at 17. She reviewed the opinion of Dr. Hassan, Plaintiff's treating rheumatologist, and attributed some weight to her opinion that Plaintiff: was limited to lifting and carrying up to 10 pounds at a time; could stand or walk less than 2 hours of an 8-hour workday; could sit no more than 30 minutes at a time without standing or walking for 15 minutes every hour;

-2-

needed a sit/stand option due to pain; could perform only occasional twisting, stooping and climbing of stairs; could never crouch or climb ladders; and had limits on kneeling and crawling. *Id*. at 20-21. The ALJ found that Dr. Hassan failed to specify the limits of Plaintiff's kneeling and crawling, she did not select the box indicating that Plaintiff required a cane, and Dr. Hassan noted that Plaintiff's symptoms were seldom severe enough to interfere with attention and concentration and would require her to miss work on average only one time per month. *Id*. at 21. The ALJ also reasoned that Dr. Hassan's opinion as to Plaintiff's exertional abilities was internally inconsistent and it was significantly influenced by Plaintiff's subjective allegations as objective clinical observations were relatively unremarkable. *Id*.

The ALJ also reviewed the opinion of Plaintiff's treating pain management physician and found the opinion unpersuasive due to its nonspecificity with regard to Plaintiff's need for breaks. ECF Dkt. #13 at 21.

The ALJ instead chose to attribute more weight to the opinions of the state agency reviewing physicians, who found that Plaintiff could perform a range of medium work with postural limitations accounting for her pain. ECF Dkt. #13 at 21. She noted that the radiographic studies were normal and physical examinations showed only intermittent episodes of knee and wrist tenderness, with no evidence of loss of strength, sensation or stability of the lower extremities. *Id*. The ALJ also noted that Plaintiff's doctors continued to recommend that she become more active and Plaintiff could perform daily living activities and in fact became more independent as she moved into her own apartment. *Id*.

As to Plaintiff's mental health limitations, the ALJ noted that none of Plaintiff's treating mental health sources offered a medical source statement of her work-related limitations and none suggested that she was incapable of basic work activity. ECF Dkt. #13 at 21. She noted that Plaintiff's treating psychiatrist attributed a Global Assessment of Functioning score of 61-70, indicative of mild symptoms, on a routine basis. *Id*. The ALJ further considered the opinion of the agency examining psychologist and attributed it less weight as Plaintiff was not in regular mental health treatment and her personal family issues at the time exacerbated her anxiety and depressive

symptoms. *Id.* She also noted that subsequent treatment records showed no difficulties with memory, sustained concentration, and improved anxiety symptoms with medications. *Id.* at 22.

The ALJ attributed more weight to the agency reviewing psychological consultants, who opined that Plaintiff could carry out simple, 2-3 step repetitive tasks, in a setting without pace or high production demands, and only occasional changes in work duties with some supervisory support. ECF Dkt. #13 at 22.

The ALJ went on to find that with the RFC that she determined for Plaintiff, Plaintiff could perform her past relevant work as a housekeeper and custodian. ECF Dkt. #13 at 22. The ALJ alternatively found that there were a significant number of jobs existing in the national economy that Plaintiff could perform with the RFC that she determined. *Id.* at 23. The ALJ therefore found that Plaintiff was not under a disability as defined in the Social Security Act from February 1, 2009, through the date of her decision. *Id.* at 24.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. LAW AND ANALYSIS

### A. Law on Treating Physician Opinions[3]

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, she must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c). An ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527(c).

In addition, more weight is attributed to the opinions of examining medical sources than to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, an ALJ can attribute significant weight to the opinions of a nonexamining state agency medical expert in some circumstances because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). Moreover, an ALJ is not required to explain why she favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain

the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006).

### B. Opinion of Dr. Hassan

Plaintiff's sole assertion of error is that the ALJ violated the treating physician rule by failing to give good reasons for affording less than controlling weight and only some weight to the opinion of Dr. Hassan, Plaintiff's treating rheumatologist. ECF Dkt. #16 at 7-13. Plaintiff contends that Dr. Hassan's opinion sets forth greater limitations than that found by the ALJ and Dr. Hassan's limitations clearly demonstrate that Plaintiff can perform only sedentary work, which under the Agency's Grid Rules would direct a finding of disabled when considering Plaintiff's vocational factors. *Id.* at 7-8. Plaintiff asserts that the ALJ also failed to discuss the required factors for the weight she attributed to Dr. Hassan's opinions, the ALJ relied upon internal inconsistencies of Dr. Hassan's opinion without identifying said inconsistencies, and the ALJ merely speculated that Dr. Hassan relied upon Plaintiff's subjective allegations in forming her opinion. *Id.* at 9-13. Finally, Plaintiff argues that the ALJ improperly attributed more weight to the opinions of the state physicians who did not examine Plaintiff and she improperly concluded that Plaintiff was not as disabled as she stated because Plaintiff's treating physicians recommended that she should become more active. *Id.* at 11-12.

On February 6, 2015, Dr. Hassan completed a form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." ECF Dkt. #13 at 1644. Dr. Hassan opined that Plaintiff had the abilities to: lift and carry less than 10 pounds occasionally and frequently; stand and walk less than 2 hours per day out of an 8-hour workday; sit about 6 hours of an 8-hour workday; sit for 60 minutes at a time before having to alternate sitting, standing or walking; stand for 30 minutes before having to change positions; shift positions at will; and walk around for 60 minutes for 15 minute increments. *Id.* As for the medical findings supporting these limitations, Dr. Hassan wrote: "osteoarthritis of knees." *Id.*

Dr. Hassan also opined that Plaintiff could occasionally twist, stoop and climb stairs, but could never crouch or climb ladders. ECF Dkt. #13 at 1645. As to the medical findings supporting these limitations, Dr. Hassan wrote, "Knee pain from osteoarthritis." *Id.* She also opined that

Plaintiff had kneeling and crawling limitations from the same impairment, but the impairment would seldom be severe enough to interfere with attention and concentration to perform work-related tasks. *Id*. Dr. Hassan further opined that Plaintiff would miss about one day per month of work due to her impairments and treatment. *Id*. She indicated that Plaintiff's symptoms and limitations began in 2012 and the limitations lasted or would be expected to last 12 months or more. *Id*.

### **C.** **Analysis of ALJ Decision's on Treating Physician Opinion**

The ALJ addressed Dr. Hassan's opinion. ECF Dkt. #13 at 20. She afforded it less than controlling weight, giving part of it some weight, explaining that Dr. Hassan failed to specify the limits on Plaintiff's kneeling and crawling, and finding that Dr. Hassan's exertional limitations to sedentary work were internally inconsistent and appeared to be influenced by Plaintiff's subjective allegations. *Id*. at 21.

Defendant cites to a number of reasons why the ALJ properly discounted Dr. Hassan's opinion. ECF Dkt. #18 at 7-6-10. Defendant asserts that Dr. Hassan's opinion merely consisted of selecting checkboxes on a form with no narrative support. *Id*. at 6-7. Defendant also contends that the treating physician "good reasons" rule does not apply to Dr. Hassan's opinion because it merely repeated Plaintiff's subjective complaints. *Id.* at 8. However, the ALJ did not cite to these assertions as reasons for discounting Dr. Hassan's opinion. Accordingly, the Court does not accept such post-hoc rationalizations by Defendant. *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993)(court will not accept post-hoc rationalizations for agency action).

Plaintiff asserts that Dr. Hassan's opinion clearly set forth greater limitations than that found by the ALJ and she contends that Dr. Hassan's opinion met Plaintiff's burden of producing evidence showing that she is disabled under the Agency's Grid Rules. ECF Dkt. #16 at 7-8. However, as Plaintiff knows, the ALJ is not obligated to accept Dr. Hassan's opinion if she provides good reasons for not attributing controlling weight to it. Plaintiff also asserts that the ALJ failed to acknowledge or discuss any of the regulatory factors in 20 C.F.R. § 404.1527(c) after she decided not to afford controlling weight to Dr. Hassan's opinion. *Id*. at 9-10.

The Court finds that the ALJ could have provided a more thorough analysis of Dr. Hassan's opinion. However, her reasons for attributing less than controlling weight to the opinion were

-9-

adequate to meet the treating physician rule. The ALJ properly found that Dr. Hassan failed to specify the limits on Plaintiff's kneeling and crawling as Dr. Hassan's opinion lacks specificity as to such limits. ECF Dkt. #13 at, 21, citing ECF Dkt. #13 at 1645. The ALJ also reasoned that while Dr. Hassan set forth her rather restrictive limitations for Plaintiff, Dr. Hassan nevertheless indicated that Plaintiff's symptoms were seldom severe enough to interfere with her attention and concentration and Dr. Hassan opined that Plaintiff would miss work only on average one day per month due to her symptoms and treatment. *Id*. These findings mitigate Dr. Hassan's severe limitations. Finally, the ALJ reasoned that Dr. Hassan's limitations were internally inconsistent, noting that Dr. Hassan's objective examinations did not support her exertional limitations for Plaintiff. *Id*. She referred to Dr. Hassan's clinical observations that were relatively unremarkable for degenerative or inflammatory processes of the knees. *Id*.

While the ALJ lacked detail in her paragraph addressing the weight that she attributed to Dr. Hassan's opinion, the ALJ's decision as a whole adequately elaborates on the ALJ's good reasons for attributing less than controlling weight to the opinion, for affording the opinion that weight that she did, and for finding Dr. Hassan's limitation to sedentary work activities to be unpersuasive. As to the ALJ finding that Dr. Hassan's limitations in her opinion were internally inconsistent with her medical findings, the ALJ specified some of the inconsistencies elsewhere in her decision. When she reviewed the medical evidence, the ALJ cited to Dr. Hassan's treatment notes dated February 26, 2014 when Plaintiff presented to her for follow-up of bilateral knee and leg pains. ECF Dkt. #13 at 17, citing ECF Dkt. #13 at 1089. The treatment notes showed that upon examination, Dr. Hassan found that Plaintiff had no edema, her right 4th PIP joint was tender, her left knee was tender with no warmth or effusion, and her left ankle was tender and slightly warm. *Id*. at 1091. Dr. Hassan reviewed Plaintiff's blood work and her knee x-rays and MRI, which showed no significant abnormalities in the left knee and only mild chondromalacia of the patella and medial joint space narrowing at the knee, but normal joint spaces at the ankle. *Id. at* 1089, 1092. Dr. Hassan suggested that Plaintiff may have Sjogren's Syndrome due to her symptoms and antibodies. *Id*. However, Dr. Hassan was unsure whether Plaintiff's joint pain was related to a possible Sjogren's Syndrome diagnosis as the left knee swelling had improved and diagnostic aspiration was not possible at the

time of the visit. *Id*. These mild clinical and objective medical findings support the ALJ's decision to attribute less than controlling weight to Dr. Hassan's opinion and to find that her sedentary limitations were unpersuasive.

The ALJ also cited to other treating physicians' reports referring to a lack of objective clinical evidence to support Plaintiff's pain complaints. ECF Dkt. #13 at 18. He cited to Dr. Rosenberg's October 1, 2014 examination in which he concluded that nothing on his examination of Plaintiff explained her right knee pain. *Id*. at 1512. Even Dr. Hassan's September 24, 2014 treatment note indicated that "[t]he patient's symptoms are out of proportion to exam findings" of a tender knee with no swelling and MRI imaging results showing no evidence of internal derangement, intact menisci, no significant effusion, and only mild chondromalacia of the patella on the right knee. *Id*. at 1505. The ALJ also cited to Dr. Rosenberg's progress note dated January 21, 2015 that Plaintiff had right knee pain of an unclear etiology. ECF Dkt. #13 at 18, citing ECF Dkt. #13 at 1629.

In addition, the ALJ cited to numerous radiographic studies showing relatively normal results, including a June 7, 2013 right knee x-ray, an August 2, 2013 MRI of the right knee, February 20, 2104 EMG results, a February 26, 2014 left knee x-ray, and a February 5, 2015 standing x-ray. ECF Dkt. #13 at 17, citing ECF Dkt. #13 at 625, 905, 1085-1086, 1660.

The ALJ also noted that while Plaintiff had positive ANA and SSA markers which led her treating physicians to suspect Sjogren's Syndrome, the record remained inconclusive of such a diagnosis. ECF Dkt. #13 at 17, citing ECF Dkt. #13 at 1410-1417.

The ALJ additionally cited to the opinion of Plaintiff's treating pain management doctor, Dr. Hearn, who noted on March 18, 2015 that she would complete Plaintiff's social security disability paperwork, but she could not state that Plaintiff could not work in any capacity, although she would restrict Plaintiff's ability to squat and recommend breaks for Plaintiff's knee pain. ECF Dkt. #13 at 21, citing ECF Dkt. #13 at 1699. Dr. Hearn's physical examination that day revealed no swelling, warmth or effusion and full range of motion and strength of the right knee, but some tenderness to the touch. *Id*. at 1699-1700.

Finally, the ALJ also cited to Plaintiff's conservative, routine treatment that was provided when she was symptomatic and to Plaintiff's daily living activities. ECF Dkt. #13 at 17-20. The ALJ noted that Plaintiff had aspirations of her knees and steroid injections when needed, which Plaintiff indicated provided her relief, and she was prescribed pain medications when needed. *Id*. The ALJ also noted that Plaintiff participated in physical therapy, was exercising to lose weight, and she was walking. *Id*. at 18-19, citing ECF Dkt. #13 at 1035-1036, 1205, 1487-1488. The ALJ cited to Plaintiff's daily living activities, including moving into an apartment by herself, volunteering at her grandchildren's school, goes to the library, walking the IX center over a weekend, and serving as an usher in her church congregation. ECF Dkt. #13 at 17 and 20, citing ECF Dkt. #13 at 55-56, 64-65, 1562.

For these reasons, even without addressing Plaintiff's assertion that Dr. Hassan appeared to rely upon Plaintiff's subjective allegations, the Court finds that the ALJ adequately complied with the treating physician rule and substantial evidence supports her decision to attribute less than controlling weight to Dr. Hassan's opinion.

Plaintiff also complains that the ALJ did not acknowledge or discuss the factors of 20 C.F.R. § 404.1527(c) after she decided to attributed less than controlling weight to Dr. Hassan's opinion. The Court finds no merit to this assertion. The ALJ's decision cites to this regulation and the ALJ acknowledged Plaintiff's treating physicians from the agency consulting physicians, noted the specializations of the physicians, including Dr. Hassan and Dr. Yue as Plaintiff's treating rheumatologists, Dr. Hearn as Plaintiff's treating pain management physician, and Dr. Rosenberg as Plaintiff's treating primary care physician, and she provided sufficient explanation of the supportability and consistency of the medical opinions with the record as a whole. ECF Dkt. #13 at 16-22. Thus, although she may not have directly addressed or articulated each factor under the regulation in her decision, the ALJ did consider and discuss most of the factors and substantial evidence supports the weight that she gave to the medical opinions.

## **VI. CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: September 28, 2017     */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE